UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL THOMAS, *et al.*,

           Plaintiffs,

    v.

JAY BHATTACHARYA, in his official
capacity as Director of the CENTERS FOR
DISEASE CONTROL AND PREVENTION,

        Defendant.

Civil Action No. 25-2685 (JMC)

**MOTION TO DISMISS AND
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

Table of Contents .................................................................................................... i

Table of Authorities ............................................................................................. iii

Background ............................................................................................................. 1

    I.      The CDC's Immunization Recommendations ....................................... 1

    II.     Recent Updates to Recommended Schedule ......................................... 3

    III.    Plaintiffs' Claims ................................................................................... 4

Legal Standards ..................................................................................................... 5

    I.      Rule 12(b)(1) ........................................................................................ 5

    II.     Rule 12(b)(6) ........................................................................................ 6

Argument ............................................................................................................... 7

    I.      The Court Should Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction. ........................................................................................... 7

          A.     Plaintiffs Fail to Establish Standing. ....................................... 7

          B.     Plaintiffs' Claims Are Moot. .................................................. 16

    II.     Plaintiffs Have Failed to Plead an Actionable Administrative Procedure Act Claim. ................................................................................................... 20

          A.     The Statute at Issue Gives the Agency Discretion, and the Agency's Recommendations are Not Reviewable under the APA. ......................... 20

          B.     Issuance of the Recommended Schedule Is Not a Final Agency Action.. 21

          C.     CDC's Decision to Adopt the Recommended Schedule is Neither Arbitrary Nor Capricious. ......................................................................... 22

          D.     CDC Did Not Violate the APA by Creating Binding Rules Without Notice-and-Comment Rulemaking. .......................................................... 25

    III.    CDC Did Not Violate the Fifth Amendment. ...................................... 26

          A.     Plaintiffs Have Not Described a Fundamental Liberty Interest Protected by Substantive Due Process. ........................................................................... 26

          B.     The CDC's Vaccine Recommendations Pass Rational Basis Review. ...... 28

IV.    CDC Did Not Violate the Fifth Amendment's Equal Protection Guarantee. ....... 28

V.    CDC Did Not Violate the First Amendment by Punishing or Suppressing Disfavored Viewpoints or Expression. ................................................................. 29

Conclusion ............................................................................................................................ 32

# TABLE OF AUTHORITIES

*Akiachak Native Cmty. v. Dep't of Interior*,
    827 F.3d 100 (D.C. Cir. 2016) ............................................................ 17, 18, 19

*Alaska v. Dep't of Agric.*,
    17 F.4th 1224 (D.C. Cir. 2021) ............................................................... 17

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ............................................................................... 16

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
    126 F.3d 1118 (9th Cir. 1997) ................................................................ 16

*Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*,
    659 F.3d 13 (D.C. Cir. 2011) .................................................................. 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 6, 7

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
    462 U.S. 87 (1983) ............................................................................... 24

*Baystate Franklin Med. Ctr. v. Azar*,
    950 F.3d 84 (D.C. Cir. 2020) .................................................................. 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 6

*Bennett v. Spear*,
    520 U.S. 154 (1997) .............................................................................. 21

*Church of Scientology of Cal. v. U.S.*,
    506 U.S. 9 (1992) ................................................................................. 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................... 5, 6, 8

*Clark v. Jeter*,
    486 U.S. 456 (1988) ............................................................................ 28-29

*Clarke v. United States*,
    915 F.2d 699 (D.C. Cir. 1990) (en banc) .................................................. 19

*Ctr. for Biological Diversity v. Dep't of Interior*,
    144 F.4th 296 (D.C. Cir. 2025) ................................................................. 6

*Ctr. for Law and Educ. v. Dep't of Educ.*,
    396 F.3d 1152 (D.C. Cir. 2005) ............................................................... 14

*Dalton v. Specter*,
    511 U.S. 462 (1994) ............................................................................. 22

*Davis v. FEC*,
   554 U.S. 724 (2008) ................................................................................................ 11

*Dep't of Commerce v. New York*,
   588 U.S. 752 (2019) ................................................................................................ 23

*Dep't of State v. Muñoz*,
   602 U.S. 899 (2024) ................................................................................................ 26

*Drake v. F.A.A.*,
   291 F.3d 59 (D.C. Cir. 2002) ............................................................................ 20, 21

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
   878 F.3d 371 (D.C. Cir. 2017) ................................................................................ 15

*Equal Means Equal v. Ferriero*,
   3 F.4th 24 (1st Cir. 2021) ....................................................................................... 14

*Equal Rights Ctr. v. Post Properties, Inc.*,
   633 F.3d 1136 (D.C. Cir. 2011) .............................................................................. 15

*FCC v. Prometheus Radio Project*,
   141 S. Ct. 1150 (2021) ....................................................................................... 23-24

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024) ........................................................................................... 13, 14

*FDA v. Wages & White Lion Invs., LLC*,
   604 U.S. 542 (2025) ................................................................................................ 22

*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015) .................................................................... 13, 14, 15

*Friends of Animals v. Bernhardt*,
   961 F.3d 1197 (D.C. Cir. 2020) .............................................................................. 17

*Washington v. Glucksberg*,
   521 U.S. at 720 (1997) ............................................................................................ 26

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ................................................................................................ 27

*Griswold v. Connecticut*,
   381 U.S. 479 (1965) ................................................................................................ 26

*Gunn v. Minton*,
   568 U.S. 251 (2013) .................................................................................................. 5

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................................................ 23

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905) .................................................................................................. 27

*Keep Chi. Livable v. City of Chi.*,
   913 F.3d 618 (7th Cir. 2019) ................................................................................ 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .............................................................................................. 5

*\*Lukaszczyk v. Cook Cty.*,
   47 F.4th 587 (7th Cir. 2022) ......................................................................... 27, 28

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989) .............................................................................................. 24

*Martin v. EPA*,
   271 F. Supp. 2d 38 (D.D.C. 2002) ....................................................................... 31

*Midwest Ozone Grp. v. EPA*,
   61 F.4th 187 (D.C. Cir. 2023) ............................................................................. 24

*Mills v. Green*,
   159 U.S. 651 (1895) .............................................................................................. 16

*Moore v. City of East Cleveland*,
   431 U.S. 494–06 (1977) ........................................................................................ 26

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................................................ 22

*\*Murthy v. Missouri*,
   603 U.S. 43 (2024) .............................................................................................. 8-9

*Nahid Ghulam Dastagir v. Blinken*,
   557 F. Supp. 3d 160 (D.D.C. 2021) ....................................................................... 2

*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
   680 F.2d 810 (D.C. Cir. 1982) ....................................................................... 16, 17

*Nat'l Black Police Ass'n*,
   108 F.3d 346 (D.C. Cir. 1997) ................................................................... 17, 18, 19

*Nat'l Wildlife Fed'n v. Hodel*,
   839 F.2d 694 (D.C. Cir. 1988) ............................................................................. 19

*Novartis Pharms. Corp. v. Kennedy*,
   156 F.4th 626 (D.C. Cir. 2025) ............................................................................. 24

*NRA of America v. Vullo*,
   602 U.S. 175 (2024) .............................................................................................. 30

*Penland v. Mabus*,
   78 F. Supp. 3d 484 (D.D.C. 2015) ....................................................................... 20

*Pharm. Research & Mfrs. of Am. v. HHS*,
   43 F. Supp. 3d 28 (D.D.C. 2014) ........................................................................... 2

*Pierce v. Society of Sisters*,
    268 U.S. 510–35 (1925) ................................................................................................. 26

*Pipeline Co. v. FERC*,
    897 F.2d 570 (D.C. Cir. 1990) ....................................................................................... 19

*Pollack v. Duff*,
    793 F.3d 34 (D.C. Cir. 2015) ......................................................................................... 28

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) ......................................................................................................... 5

*\*Renal Physicians Ass'n v. Dep't of Health and Hum. Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007) ............................................................................ 9, 10, 11

*\*Reno v. Flores*,
    507 U.S. 292 (1993) ....................................................................................................... 28

*Rochin v. California*,
    342 U.S. 165 (1952) ................................................................................................. 27, 28

*Rosemere Neighborhood Ass'n v. Envtl. Prot. Agency*,
    581 F.3d 1169–73 (9th Cir. 2009) ................................................................................. 16

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995) ....................................................................................................... 29

*Row 1 Inc. v. Becerra*,
    92 F.4th 1138 (D.C. Cir. 2024) ..................................................................................... 17

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ....................................................................................................... 14

*Singh v. United States*,
    Civ. A. No. 20-799, 2021 WL 229963 (N.D. Ohio Jan. 22, 2021) ................................. 20

*Slidewaters LLC v. Washington State Dep't of Lab. and Indus.*,
    4 F.4th 747 (9th Cir. 2021) ........................................................................................... 28

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................ 6, 7, 8

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ....................................................................................................... 29

*\*Telecomms. Research & Action Ctr. v. FCC*,
    800 F.2d 1181 (1986) ..................................................................................................... 25

*Bolling v. Sharpe*,
    347 U.S. 497 (1954) ................................................................................................. 28, 29

*Town of Chester v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) ......................................................................................................... 6

*Troxel v. Granville,*
    530 U.S. 57 (2000) ................................................................................ 27

*\*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ......................................................................... 13, 15

*Union of Concerned Scientists v. Wheeler,*
    954 F.3d 117 (1st Cir. 2020) .............................................................. 23

*Urban Health Care Coal. v. Sebelius,*
    853 F. Supp. 2d 101 (D.D.C. 2012) ................................................... 12

*US Ecology, Inc. v. Dep't of Interior,*
    231 F.3d 20 (D.C. Cir. 2000) .............................................................. 12

*Women Prisoners of D.C. Dep't of Corrs. v. Dist. of Columbia,*
    93 F.3d 910 (D.C. Cir. 1996) .............................................................. 28

*Zablocki v. Redhail,*
    434 U.S. 374–86 (1978) ...................................................................... 26

*Zucht v. King,*
    260 U.S. 174 (1922) ................................................................... 2, 3, 4, 5

**Statutes**

5 U.S.C. § 551 ............................................................................................ 25

5 U.S.C. § 553 ............................................................................................ 25

5 U.S.C. § 702 ............................................................................................ 22

5 U.S.C. § 704 ............................................................................................ 21

5 U.S.C. § 706 .......................................................................................... 5, 22

42 U.S.C. § 243 ............................................................................. 1, 21, 23, 25

\* indicates cases on which counsel chiefly relies

Defendant Jay Bhattacharya, in his official capacity as Acting Director of the Centers for Disease Control and Prevention ("CDC"), respectfully submits this memorandum in support of his motion to dismiss the Complaint (ECF No. 1) under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).[1] Plaintiffs attack the CDC's Recommended Childhood and Adolescent Immunization Schedule ("Recommended Schedule") from multiple angles, but none succeed. In particular, Plaintiffs assert that the "cumulative effects" of the Recommended Schedule need to be studied, and the CDC's publication of the schedule causes Plaintiffs injury because States use it in implementing State requirements mandating specific vaccines. As demonstrated below, however, Plaintiffs lack standing to bring this suit, and their claims are moot. Therefore, Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Even if they had standing and presented a live controversy, each of their Administrative Procedure Act and constitutional claims fail to state a claim for relief under Rule 12(b)(6).

## BACKGROUND

### I.    The CDC's Immunization Recommendations

Congress directed the CDC to "assist" states with the "prevention and suppression of communicable diseases," "cooperate" with states in the enforcement of their health regulations, and advise the states on "matters relating to the preservation and improvement of the public health." 42 U.S.C. § 243. In carrying out this mission, the CDC publishes and regularly updates a Recommended Schedule, which recommends specific vaccines to protect children's health. CDC, Who Sets the Vaccine Schedule? (August 9, 2024), https://www.cdc.gov/vaccines-

---

[1]    Pursuant to Rule 25(d), Jay Bhattacharya, current Acting Director of CDC, is automatically substituted as Defendant. When a federal agency head or other public officer is named as a defendant in an official capacity and subsequently dies, resigns, or ceases to hold office, the successor officer is automatically substituted as the defendant. FED. R. CIV. P. 25(d).

children/schedules/who-sets.html#:~:text=CDC%20sets%20the%20immunization%20schedules, American%20College%20of%20Nurse%2DMidwives (last visited Feb. 19, 2026).[2]

The CDC generally sets the immunization schedule based on adopted Advisory Committee on Immunization Practices ("ACIP")'s recommendations. *Id.* ACIP is comprised of medical and public health experts who review available data on newly licensed and existing vaccines. *Id.* ACIP generally meets three times each year to discuss vaccine recommendations. *Id.* The committee considers how safe and effective the vaccine is when given at a specific age, the severity of the disease the vaccine prevents, how many people get the disease if there is no vaccine, and how well the vaccine helps the body produce immunity to the disease. *Id.* The CDC Director may choose to adopt, modify, or reject ACIP's recommendations. If adopted, the Recommended Schedule is published as an official CDC/Health and Human Services recommendation in the Morbidity and Mortality Weekly Report. CDC, Morbidity and Mortality Weekly Report (January 8, 2026), https://www.cdc.gov/mmwr/publications/index.html (last visited February 19, 2026); CDC, ACIP Charter 1 (December 3, 2025), https://www.cdc.gov/acip/downloads/acip-charter.pdf (last visited February 19, 2026). This schedule is non-binding and made available to states and local authorities for their consideration.

Generally, states set vaccination policy through their police powers. *Zucht v. King*, 260 U.S. 174, 176 (1922). The Complaint alleges that "most" states incorporate the CDC's recommended vaccines directly into statute or regulation and "uniformly" adopt ACIP's recommendations regarding conditions that increase the risk for a serious adverse reaction (called

---

[2]     The Court should take judicial notice of the cited publications, as the Court may take judicial notice of information posted on official government websites without transforming the Government's motion into one for summary judgment. *Pharm. Research & Mfrs. of Am. v. HHS*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014); *Nahid Ghulam Dastagir v. Blinken*, 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021).

"contraindications") and other precautions; "some states make minor modifications" to these vaccination recommendations. Compl. ¶ 1. The CDC has no control over whether states use CDC recommendations in their laws or regulations.

## II.  **Recent Updates to Recommended Schedule**

On January 5, 2026, former Deputy Secretary of Health and Human Services Jim O'Neill, in his role as Acting Director of the CDC, accepted recommendations from a recent assessment of U.S. childhood immunization practices. CDC, Decision Memo, https://www.hhs.gov/sites/default/files/decision-memo-adopting-revised-childhood-adolescent-immunization-schedule.pdf (last visited February 19, 2026); *see also* Presidential Memorandum to Update Childhood Immunization Schedule, https://www.hhs.gov/press-room/cdc-acts-presidential-memorandum-update-childhood-immunization-schedule.html (last visited February 19, 2026). This update substantively changed the CDC's immunization recommendations in the Recommended Schedule. Although the CDC continues to recommend immunization against ten core diseases, plus varicella (chickenpox), for all children, its approach to other vaccines changed. The announcement concerning the updated CDC childhood and adolescent immunization schedule addressed: (1) Immunizations Recommended for All Children, (2) Immunizations Recommended for Certain High-Risk Groups or Populations, and (3) Immunizations Based on Shared Clinical Decision-Making. *Id.* In this update, some vaccines that the CDC previously recommended for nearly all children are included in a different category based on individual risk factors and family-provider discussions. These include seasonal influenza, COVID-19, Rotavirus, Respiratory syncytial virus (RSV), certain meningococcal vaccines, and Hepatitis A and B (in specific contexts). *Id.*

Plaintiffs' complaint describes the so-called "vaccine categories" of "Category A" and "Category B," Compl. ¶ 4, but this terminology is outdated. Although the CDC uses a type of

recommendation called "shared clinical decision-making," in which the decision whether to vaccinate is "individually based and informed by a decision process between the health care provider and the patient or parent/guardian," it does not designate vaccines as Category A or Category B. *Id.*

### III.    <u>Plaintiffs' Claims</u>

Plaintiffs' Complaint asserts that the widespread statutory incorporation of ACIP guidance into state law transforms these federal recommendations into binding national mandates, Compl. ¶ 19, and that the "contraindications and precautions framework" results in "rigid universal Category A recommendations, excluding many documented risk factors and preventing physicians from exercising individualized medical judgment." *Id.* ¶ 5. It contends that ACIP disseminates "an unscientific, one-size-fits-all model that denies individualized risk assessment while refusing to acknowledge that some children suffer serious harm from continued vaccination." *Id.* Plaintiffs assert that, as a result, physicians cannot exercise clinical judgment, and children with family histories of vaccine injury or genetic vulnerabilities must continue receiving all vaccines on the schedule or be prevented from attending school. *Id.* ¶ 39.

The Complaint also includes assertions that physicians who attempt to protect vulnerable patients face "career destruction." *Id.* According to the Complaint, when Plaintiff Dr. Paul Thomas published a study finding vaccinated children had significantly higher rates of chronic illness, the state of Oregon suspended his license within five days. *Id.* ¶¶ 7, 12. And when Plaintiff Dr. Kenneth Stoller used genetic markers to identify at-risk children, California's Medical Board declared that only CDC guidelines could be followed and revoked his medical license. *Id.* ¶ 7. The third Plaintiff, Stand for Health Freedom ("SHF"), is a national 501(c)(4) not-for-profit organization that operates through 41 state chapter leaders and a nationwide network; it proclaims

that it is "dedicated to protecting informed consent, parental rights, and medical freedom for families." *Id.* ¶ 14.

Plaintiffs assert four claims in this suit: (1) violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (2) Fifth Amendment violations for denying certain persons due process of law, (3) Fifth Amendment violations for denying certain groups equal protection under the law, and (4) First Amendment violations for suppression of medical and scientific dissent. Plaintiffs' Complaint should be dismissed, in its entirety, for lack of subject-matter jurisdiction (under Rule 12(b)(1)) or for failure to state a claim upon which relief can be granted (under Rule 12(b)(6)), as described further below.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. A court's subject matter jurisdiction refers to its "statutory or constitutional power to adjudicate the case" before it. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (citation omitted). Federal courts are courts of limited jurisdiction, *Gunn v. Minton*, 568 U.S. 251, 256 (2013), with the power to adjudicate only genuine "Cases" and "Controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted). Thus, a court must presume that an action "lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon" the party invoking federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).

As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper*, 568 U.S. at 408 (internal quotation marks and citations omitted). "The law of Article III standing, which is built on separation-of-powers

principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.*

Standing, a threshold issue, ensures that the plaintiff has a "personal stake in the outcome of [a] controversy" that "justif[ies] [the] exercise of the court's remedial powers on [its] behalf." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (citation omitted). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The "threatened injury must be certainly impending to constitute injury in fact;" "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted). In addition, a "theory of standing [that] relies on a highly attenuated chain of possibilities[] does not satisfy" this requirement. *Id.* at 410. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citation omitted). In determining standing, a court may consider materials outside of the complaint. *Ctr. for Biological Diversity v. Dep't of Interior*, 144 F.4th 296, 303 (D.C. Cir. 2025) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

## II.     Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Id.* In determining whether a complaint fails to state a claim under Rule 12(b)(6), the trial court may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated [by reference] in the complaint and matters [subject to] judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

**ARGUMENT**

## I.    The Court Should Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction.

The Court should dismiss this Complaint under Rule 12(b)(1) because (1) Plaintiffs fail to establish standing, and (2) Plaintiffs' claims are moot. As to standing, Plaintiffs in this matter cannot show injury in fact that is caused by Defendant's conduct, or a likelihood that a favorable decision will redress the injury. *See Spokeo,* 578 U.S. at 338. The alleged injuries of the individual Plaintiffs here are traceable to state laws and the relevant state agencies governing medical licenses, not to the CDC. And the organization SHF has not pled allegations meeting the minimum standards for organizational standing. Furthermore, the claims pled here are moot, as the CDC announced a new Recommended Schedule almost four months after Plaintiffs filed this Complaint.

### A.    Plaintiffs Fail to Establish Standing.

#### 1.    The Individual Plaintiffs Have Not Demonstrated Causation.

The alleged injury here results from a speculative chain of events and is not caused by the CDC's conduct. A standing theory based on "a highly attenuated chain of possibilities[] does not

satisfy" the foundational requirement that a Plaintiff demonstrate standing. *Clapper*, 568 U.S. at 410. Each individual Plaintiff alleges that he lost his medical license because of his opinions about vaccines. Specifically, according to the Complaint, when Plaintiff Thomas published a study finding vaccinated children had significantly higher rates of chronic illness, the state of Oregon promptly suspended his license. Compl. ¶¶ 7, 12. The Complaint further alleges that when Plaintiff Stoller used genetic markers to identify children at risk of harm from vaccines, California's Medical Board "declared only CDC guidelines could be followed" and revoked his medical license. *Id*. ¶¶ 7, 13. Even assuming that loss of a medical license qualifies as "injury," Plaintiffs have not shown that such an injury is "fairly traceable" to the "allegedly unlawful conduct" challenged here. *Spokeo*, 578 U.S. at 338. In fact, the alleged injury each individual purportedly suffered is traceable to the States that have passed legislation empowering medical boards to regulate medical licenses, and the actions of the corresponding state agency governing medical licenses, not to the CDC's actions. States and medical boards have independent goals and incentives animating their conduct. These parties are not before the Court, and Plaintiffs do not demonstrate that these entities acted because of CDC actions rather than the independent judgment of each entity.

In asserting causation, Plaintiffs engage in a series of speculations to connect the challenged conduct at issue here (CDC's publication of the Recommended Schedule) to their "concrete and particularized injury" (revoked medical licenses). Even under the most liberal pleading standard, this speculative, attenuated causal chain cannot not be characterized as a "fairly traceable" link between the individual Plaintiffs' alleged injury and CDC's actions. This is so even if, as the Complaint alleges, the immunization recommendations are more than "advisory" in practice. *See Murthy v. Missouri*, 603 U.S. 43, 45 (2024) (where social media platforms took action

based on their own terms of service, and direction from government personnel coincided with that action, plaintiffs did not have standing to pursue claims against the government).

In fact, some States have changed their laws to disaggregate their laws from evolving CDC recommendations. For example, California passed a law in September 2025 establishing that the State's baseline for vaccine coverage is the CDC's Recommended Schedule as of January 1, 2025, regardless of any updates. CAL. HEALTH & SAFETY CODE § 120164 (West 2025). And Oregon's Health Authority announced after the CDC's January 2026 update that it did not change its school immunization requirements as a result, emphasizing that immunization requirements "are made at the state level and are independent of federal recommendations." Oregon Health Authority, School and Child Care Immunization (2026), https://www.oregon.gov/oha/ph/preventi onwellness/vaccinesimmunization/gettingimmunized/pages/school.aspx (last visited Feb. 19, 2026).

In order to establish standing where a third party's actions are at issue, Plaintiffs would need to show that the third-party actions are linked to the CDC's activity such that directing the CDC to change the Recommended Schedule will be "reasonably likely to cause" the third party to change course. *Renal Physicians Ass'n v. Dep't of Health and Hum. Servs.*, 489 F.3d 1267, 1276 (D.C. Cir. 2007) (plaintiff lacked standing where it failed to show link between third-party medical clinics' decision to reduce the hourly wage of medical directors and the continuing existence of a regulatory safe-harbor provision, such that invalidating the provision would be reasonably likely to cause the clinics to raise the hourly wage). To date, approximately twenty-eight states have announced publicly that they do not intend to follow CDC changes to childhood immunization schedules. Kaiser Family Foundation, State Recommendations for Routine Childhood Vaccines: Increasing Departure from Federal Guidelines (Jan. 22, 2026), https://www.kff.org/state-health-

policy-data/state-recommendations-for-routine-childhood-vaccines-increasing-departure-from-federal-guidelines/ (last visited Feb. 19, 2026). Thus, Plaintiffs cannot demonstrate that States would automatically adopt any future CDC vaccine recommendations. And as to state medical boards, it is highly speculative that the California and Oregon medical boards would change their positions on specific medical licensing decisions based on future changes to the Recommended Schedule.

Plaintiffs' Complaint anticipates this problem and alleges that if childhood vaccines were reclassified to "Category B," the individualized protocols that formed the basis for each Plaintiff's medical opinion would become "permissible medical practice," which could lead to Plaintiffs obtaining new medical licenses. Compl. ¶¶ 26, 30. Even assuming these assertions are true, this faulty argument ignores that changing "permissible medical practice" would not necessarily lead to changes in viewpoints at the Oregon or California medical boards or medical license criteria relevant to either individual Plaintiff. To be sure, the best that Plaintiffs can do is state that specific CDC actions "could lead" to their obtaining new medical licenses. *Id.* This speculative avowal is not sufficient to establish standing.

The Complaint includes numerous dramatic allegations, but the actions described are not traceable to the CDC. For example, the Complaint alleges, "[w]hen researchers publish findings that challenge the CDC's narrative, their studies are retracted without findings of fraud." Compl. ¶ 103. As the Court can see from Plaintiffs' use of passive voice, Plaintiffs do not allege that CDC directed any retractions. *Id.* Although the Complaint also alleges that a CDC scientist attempted to "expose data manipulation" but was "silenced by agency leadership," *id.* ¶ 103, this allegation is based a study published in 2004, which the scientist discussed in a statement he issued in 2014. *Id.* ¶ 61 n.30. The assertion that the injuries Plaintiffs describe are traceable to any actions agency

leadership took back then is untenable. Nor does the public statement Plaintiffs cite in the Complaint support their claims; in the statement's full text, the scientist states: "My colleagues and supervisors at the CDC have been entirely professional since this matter became public. In fact, I received a performance-based award after this story came out. I have experienced no pressure or retaliation." Thompson Statement, Aug. 27, 2014, https://cdn.factcheck.org/UploadedFiles/William-Thompson-statement-27-August-2014.pdf. (last visited Feb. 19, 2026).

Plaintiffs must show standing for each claim they bring and for each form of relief sought. *Davis v. FEC*, 554 U.S. 724, 734 (2008). Plaintiffs' standing argument for their Fifth Amendment due process claim is even more of a stretch. Plaintiffs ground that claim in allegations that parents have a fundamental liberty interest in directing their children's medical care and that children have a fundamental right to bodily integrity. Compl. ¶¶ 80-81. Yet Plaintiffs do not assert that they are parents or children. For this reason, they simply cannot show that a purported Fifth Amendment violation was the cause of the asserted injury.

In asserting their First Amendment claim for viewpoint suppression, Plaintiffs also cite to deprivation of parents' rights, specifically parents' right to "informed consent that is the cornerstone of medical ethics and constitutional liberty." *Id*. ¶ 105. The Court should likewise find that these Plaintiffs, who are not parents, do not have standing to assert this claim, as their asserted injury does not implicate a parent's right to informed consent for children's medical procedures.

2.    The Individual Plaintiffs Do No Demonstrate Redressability.

Moreover, even at the pleading stage, a party must make factual allegations showing that the relief it seeks will be likely to redress its injury. *Renal Physicians Ass'n*, 489 F.3d at 1277-78. The individual Plaintiffs have not pled sufficient facts here to meet that burden. When redress depends on the cooperation of a third party, "it becomes the burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in such manner as to produce causation

and permit redressability of injury." *Urban Health Care Coal. v. Sebelius*, 853 F. Supp. 2d 101, 107 (D.D.C. 2012); *US Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24-25 (D.C. Cir. 2000) (internal quotation marks omitted).

The judicial relief that Plaintiffs request would not remedy the injuries they describe. They request declaratory relief that the CDC violated the APA and constitutional guarantees, but obtaining a judicial statement that the "contraindications and precautions framework" is unlawful gets Plaintiffs nothing, standing alone. *See* Compl., Prayer for Relief, p. 26. To get any relief, they must speculate that as a direct result of a judicial pronouncement, the CDC will take action to significantly change the Recommended Schedule, and that action would lead to changes enacted through state legislation, as well as a wholesale change in the attitudes of the personnel who make up state medical boards and corresponding changes to specific decisions about medical licenses. Plaintiffs have not alleged any facts suggesting these events are likely to take place. Indeed, any possibility that the personnel who make up state medical boards would change their views as a result of a CDC policy change is exceptionally speculative, as their views depend on numerous factors, including developments in scientific literature overall, decisions of various officials in each state as to who to appoint to the relevant boards, and future consultations and decisionmaking of the medical boards themselves.

Plaintiffs also request that the Court order the CDC "to conduct scientifically rigorous studies of the cumulative safety of the full childhood vaccination schedule as recommended by the Institute of Medicine, including comparison of health outcomes between fully vaccinated and unvaccinated populations." *Id.* Yet Plaintiffs do not, and cannot, demonstrate that a court-directed study of this type will result in their desired relief, as it would depend on the specific evidence gathered and analysis of that evidence.

Overall, Plaintiffs' factual allegations do not establish that the relief they seek—court orders declaring that CDC's actions violated the law and directing the CDC to engage in studies and revise its vaccine recommendations—will be likely to redress their injury, as the series of third-party activities that might result from such an order is too speculative.

3.    The Organizational Plaintiff Fails to Meet the Relevant Standard.

The organizational Plaintiff SHF fares no better in establishing standing. Under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), "an organization may establish Article III standing if it can show that the defendant's actions cause a concrete and demonstrable injury to the organization's activities" that is "more than simply a setback to the organization's abstract social interests." *Id.* at 379. Case law establishes two important limitations on the scope of standing under *Havens*. First, the plaintiff must show that the defendant's "action or omission to act injured the organization's interest." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Second, the plaintiff must show that it "used its resources to counteract that harm." *Id.* (internal quotation omitted).

SHA suggests that the CDC has impaired its ability to provide services and achieve its organizational mission. Yet the Supreme Court unanimously rejected an organization's similar allegations in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). There, the plaintiff organizations alleged the challenged actions "impaired" their "ability to provide services and achieve their organizational missions." *Id.* at 394 (quotation omitted). That theory, the Court said, "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* at 395. Instead, the Supreme Court ruled, an organization must show that the challenged action imposes an "impediment" to the organization's business activities. *Id.* For example, in *Havens*, an organization that "operated a housing counseling service" could sue a defendant that "gave [the

organization]'s employees false information about apartment availability" and thus "perceptibly impaired [the organization]'s ability to provide counseling and referral services for low- and moderate-income homeseekers." *All. for Hippocratic Med.*, 602 U.S. at 395 (citing *Havens*, 455 U.S. at 368, 379). But *Alliance for Hippocratic Medicine* cautioned that "Havens was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Id*. at 396. As a rule, an organization "cannot manufacture its own standing" by spending resources in response to the challenged action, such as on "public advocacy and public education," to "the detriment of other spending priorities." *Id*. at 394–95.

Courts are generally resistant to the notion that advocacy organizations suffer an injury when they allege only that their normal mission advocacy has been curtailed by government action. *See Food & Water Watch,* 808 F.3d at 919; *Ctr. for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005); *Equal Means Equal v. Ferriero*, 3 F.4th 24, 30 (1st Cir. 2021); *Keep Chi. Livable v. City of Chi*., 913 F.3d 618, 625 (7th Cir. 2019). Significantly, "a mere 'interest in a problem,'" is insufficient to establish standing. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

To allege an injury to its interest, "'an organization must allege that the defendant's conduct perceptibly impaired the organization's ability to provide services in order to establish injury in fact.'" *Food & Water Watch,* 808 F.3d at 919 (quoting *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015)). An organization's ability to provide services has been "perceptibly" impaired when the defendant's conduct causes the organization's daily operations to be inhibited. *Food & Water Watch*, 808 F.3d at 919 (citations omitted). An organization does not suffer an injury in fact where it "expend[s] resources to educate its members and others" unless doing so subjects the organization to "operational costs beyond those normally expended." *Id.*

Plaintiffs' own allegations demonstrate that this case is analogous to *Alliance for Hippocratic Medicine*, not *Havens Realty*. SHF makes the cursory allegations that it has been "forced to divert substantial resources from its normal mission to address the consequences of these policies, including: developing educational materials to counter vaccine safety misinformation, hosting webinars presenting scientific evidence excluded from CDC's process, coordinating legislative advocacy for informed consent laws, and supporting families facing school exclusion." Compl. ¶ 32. These vague assertions do not establish the type and extent of drained resources required to demonstrate standing. *See Havens Realty Corp.*, 455 U.S. at 379; *Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1141 (D.C. Cir. 2011). SHF does not allege that these "substantial" resources were beyond those "normally expended." *See Food & Water Watch*, 808 F.3d at 919.

Any resources SHF used to counteract the purported consequences of CDC's vaccine recommendations—recommendations in which it has no cognizable interest, as Congress did not direct CDC to act in this area in order to protect organizations like SHF—were "a self-inflicted budgetary choice that cannot qualify as an injury in fact." *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc*., 659 F.3d 13, 25 (D.C. Cir. 2011) (internal quotation omitted); *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) (where plaintiff challenged the lack of a privacy impact assessment, any resources plaintiff used in response—as the organization had no cognizable interest in the assessment—were "a self-inflicted budgetary choice that cannot qualify as an injury in fact"). Plaintiff SHF has not established that its daily activities were inhibited by CDC's action in adopting the Recommended Schedule. Like the plaintiffs in *Sierra Club* and *Food & Water Watch*, SHF cannot generate standing simply because of its interest in the relevant policy issue.

- 15 -

Nor does SHF establish that the relief it seeks—declaratory relief that the CDC violated the APA and constitutional guarantees and a court order directing the CDC to engage in studies and then revise its vaccine recommendations—will be likely to redress its injury, as the series of third-party activities that might result from such an order is too speculative, as described above in the context of the individual plaintiffs.

In sum, Plaintiffs have not identified any unlawful government action "fairly traceable" to their harm that is likely to be redressed by a favorable judicial decision. Thus, Plaintiffs' Complaint should be dismissed for lack of standing.

### B.    Plaintiffs' Claims Are Moot.

Because the power of Article III courts extends only to actual "Cases" and "Controversies," federal courts lack jurisdiction to decide claims that have been mooted by subsequent developments. *Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 680 F.2d 810, 813-14 (D.C. Cir. 1982) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). A case becomes moot, and therefore no longer a "Case" or "Controversy" for purposes of Article III, when the issues presented "are no longer 'live' or the parties lack a 'legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam).

A federal court does not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. U.S.*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "A claim is moot if it has lost its character as a present, live controversy." *Rosemere Neighborhood Ass'n v. Envtl. Prot. Agency*, 581 F.3d 1169, 1172–73 (9th Cir. 2009) (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). Because mootness pertains to a federal court's subject-matter jurisdiction under Article III, it is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue. *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020); *Nat. Res. Def. Council, Inc.* 680 F.2d at 814; *Alaska v. Dep't of Agric.*, 17 F.4th 1224, 1226 (D.C. Cir. 2021); *Akiachak Native Cmty. v. Dep't of Interior*, 827 F.3d 100, 105-06 (D.C. Cir. 2016). For example, in *Friends of Animals*, plaintiffs challenged certain "findings" of the U.S. Fish and Wildlife Service relating to importation of sport-hunted dead animal bodies. 961 F.3d at 1200. The Department of Interior withdrew the specific findings that Plaintiffs challenged, while stating that it would use the findings in its informal adjudications. The D.C. Circuit held that the case was moot, as the agency's decision eliminated the findings' legal effect and therefore left nothing for the court to adjudicate. *Id*. at 1203. Similarly, in *Row 1 Inc. v. Becerra*, 92 F.4th 1138, 1144 (D.C. Cir. 2024), the rescission of technical direction letters to Medicare contractors mooted appellant's request for the court to vacate the policy announced in the letters.

Like these disputed government actions, a decision on the merits of the allegations in the Complaint regarding the Recommended Schedule in effect in August 2025 would be an impermissible advisory opinion. *See, e.g., Nat'l Black Police Ass'n*, 108 F.3d 346, 351, 354 (D.C. Cir. 1997); *Akiachak Native Cmty.*, 827 F.3d at 106. Plaintiffs here challenge the Recommended Schedule in place in August 2025, when they filed the Complaint. They emphasize the "cumulative" effects of the recommended vaccines. Compl. ¶ 35. In January 2026, however, the CDC removed approximately six vaccines from its list of vaccines routinely recommended for all children. Although CDC continues to recommend a number of vaccines for children across age groups, the Recommended Schedule overall is meaningfully different in 2026 than it was in 2025. To the extent that the 2025 schedule harmed children because of the sheer number of vaccines on the schedule, an assertion the CDC will dispute if this case reaches the merits stage, it is a different

question whether the revised Recommended Schedule causes these same alleged harms. Thus, the claims alleged in the Complaint are moot and should be dismissed.

          1.       There is No Reasonable Expectation that the Alleged Violations Will <u>Recur, and Interim Events Have Completely Eradicated Their Effects.</u>

Where a defendant voluntarily ceased the challenged action, the D.C. Circuit will consider whether the defendant's voluntary cessation truly renders the case moot. *Akiachak Native Cmty.*, 827 F.3d at 106. Generally, it does not unless "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation." *Nat'l Black Police Ass'n*, 108 F.3d at 349.

Here, there is no reasonable expectation that the alleged violation will recur. The CDC has not announced any intention to reenact the previous Recommended Schedule and is replacing the policy recommendations articulated in the old schedule with a revised schedule. Any conjecture that the CDC would revive its previous schedule is entirely speculative and is insufficient to forestall dismissal because of mootness. *See Akiachak Native Cmty.*, 827 F.3d at 106. As the *Akiachak Native Cmty.* court found:

> Although the voluntary repeal of a regulation does not moot a case if there is reason to believe the agency will reinstitute it, "the mere power to reenact a challenged [rule] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists" absent "evidence indicating that the challenged [rule] likely will be reenacted." No such evidence exists here.

*Id.* (quoting *Nat'l Black Police Ass'n*, 108 F.3d at 349).

Additionally, this exception to the general rules of mootness "'has no play' when the agency did not act 'in order to avoid litigation.'" *Id.* (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011)). Here, the January 2026 changes were independent of this litigation. Decision Memo, *supra* at 3 ("On December 5, 2025, the President directed the Department of Health and Human Services (HHS) and the Centers for Disease Prevention and Control (CDC) to

review best practices from peer, developed nations regarding core childhood vaccination recommendations and the scientific evidence underlying those practices."). Federal courts may only decide "'actual, ongoing controversies' and a federal court has no 'power to render advisory opinions [or] . . . 'decide questions that cannot affect the rights of litigants in the case before them.'"" *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quoting *Honig v. Doe,* 484 U.S. 305, 317 (1988) and *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (in turn quoting *North Carolina v. Rice,* 404 U.S. 244, 246 (1971))). A court must "refrain from deciding" cases where "'events have so transpired that the decision will neither presently affect the parties' rights nor have a *more-than-speculative* chance of affecting them in the future.'" *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quoting *Clarke v. United States,* 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (in turn quoting *Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 575 (D.C. Cir. 1990))). Here, any chance that the previous schedule could be expected to be re-imposed is nothing more than speculative. The voluntary cessation doctrine therefore supports dismissal on mootness grounds.

      2.    The Recommended Vaccine Schedule Does Not Fall Into the Category of "Capable of Repetition, Yet Evading Review"

Similarly, although a practice that is "capable of repetition, yet evading review" may be challenged notwithstanding the ordinary rules of mootness, an agency's decision to change course generally falls outside this exception because if the agency repeats the challenged conduct in the future, its action will be subject to review at that time. *See Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 742 (D.C. Cir. 1988) (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). Consistent with the "perfectly uncontroversial and well-settled principle of law [that] . . . when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot[,]" *Akiachak Native Cmty.*, 827 F.3d at 113, the Court should dismiss this case because the vaccine recommendations that Plaintiff challenges in the Complaint

have been replaced and superseded. Although Plaintiff may continue to desire a purely advisory opinion as to the validity of the guidelines that were on the books between November 2024 and January 5, 2026, this Court lacks jurisdiction to provide such relief.

## II.     **Plaintiffs Have Failed to Plead an Actionable Administrative Procedure Act Claim.**

Should this Court reach the merits, the Court should dismiss Count I because Plaintiffs cannot state a claim under the Administrative Procedure Act, for several reasons. First, the matter at issue here is a matter of agency discretion. Second, there is no final agency action to review. Third, to the extent the decision to issue the Recommended Schedule is considered a rule, it was not arbitrary or capricious, and Plaintiffs are essentially requesting the Court to reweigh evidence that led to the decision to issue the childhood immunization recommendations. But fundamental principles of administrative law prevent the Court from doing so.[3]

### A.     The Statute at Issue Gives the Agency Discretion, and the Agency's Recommendations are Not Reviewable under the APA.

The APA bars review "when the matter in dispute has been 'committed to agency discretion by law.'" *Drake v. F.A.A.*, 291 F.3d 59, 70 (D.C. Cir. 2002) (quoting 5 U.S.C. § 701(a)(2)) (APA review not available where the relevant statute provided for agency discretion, allowing the government official to decline to act when she was "of the opinion that the complaint does not state facts that warrant an investigation"). The discretionary bar applies when the statute in question is "drawn in 'such broad terms that in a given case there is no law to apply.'" *Id.*

---

[3]     Defendant acknowledges that there is a tension in seeking to dismiss an arbitrary-and-capricious claim without relying on an administrative record. *See Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015). But allegations in the complaint can provide a court with sufficient bases to dismiss such claims. *See, e.g., Singh v. United States*, Civ. A. No. 20-799, 2021 WL 229963 (N.D. Ohio Jan. 22, 2021). In this case, Plaintiffs request that this Court reweigh evidence before the Director and substitute its judgment for the Director's. When fundamental administrative law principles prohibit such intrusions, Plaintiffs cannot state a plausible claim under the APA.

(quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)). The court's inquiry is whether there is a "judicially manageable standard," and if one cannot be discerned, then the APA bars review. *See id*. In determining whether a matter has been committed solely to agency discretion, courts consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action. *Id.*

The Recommended Schedule is a critical part of the CDC's activities to "assist" states with the "prevention and suppression of communicable diseases," "cooperate" with states in the enforcement of their health regulations, and provide advice to the states on "matters relating to the preservation and improvement of the public health." 42 U.S.C. § 243. However, Congress did not impose a statutory mandate on the CDC to issue vaccine recommendations, and this dooms Plaintiffs' APA claim as a matter of law.

B.    **Issuance of the Recommended Schedule Is Not a Final Agency Action.**

Plaintiffs' challenge to the Recommended Schedule also fails because adopting these schedules does not qualify as final agency action. The APA provides for review only of "final agency action." 5 U.S.C. § 704. "As a general matter, two conditions must be satisfied for agency action to be 'final.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997). "First, the action must mark the 'consummation' of the agency's decisionmaking process." *Id.* "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* Issuance of the Recommended Schedule is not final agency action because it is not one from which rights or obligations are determined or legal consequences flow. Again, the schedule is issued under an authority to merely "assist" and "advise" "States and their political subdivisions." 42 U.S.C. § 243(a). Nothing about the schedule changes States' authority to regulate the prescription and administration of vaccines, or to make policy decisions about which

vaccines it may or may not require. CDC's recommendations remain non-binding for States and localities. *See Dalton v. Specter*, 511 U.S. 462, 469 (1994) (holding base closure recommendation was not final agency action). Thus, issuance of the Recommended Schedule is not final agency action.

### C.   CDC's Decision to Adopt the Recommended Schedule is Neither Arbitrary Nor Capricious.

To the extent the Court considers the CDC decision to adopt the Recommended Schedule a statutory directive and final agency action, the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. For agency policymaking and factfinding, the APA authorizes a court to "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if the administrative record demonstrates that "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The scope of this review is narrow, and reviewing courts must exercise appropriate deference to agency decisionmaking and not substitute their own judgment for that of the agency." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025) (cleaned up).

CDC recommends immunization schedules under the delegated authority of the Secretary of HHS to "assist States and their political subdivisions in the prevention and suppression of communicable diseases" and "advise the several States on matters relating to the preservation and

improvement of the public health." 42 U.S.C. § 243(a). Beyond a general authorization to "assist" and "advise," section 243(a) provides no standard "for judging how and when [CDC] should exercise its discretion." *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute does not require CDC to issue immunization recommendations—or even mention immunization schedules—much less contain "requirements to guide [the court] in assessing the propriety of [the] agency's procedures" in exercising its authority under section 243(a). *Union of Concerned Scientists v. Wheeler*, 954 F.3d 117, 121 (1st Cir. 2020). It certainly does not "constrain[]" CDC's discretion about whether to recommend immunization schedules and, if the agency so chooses, "the form and content" of such recommendations. *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019).

Plaintiffs allege that CDC's actions are arbitrary and capricious because the agency has "entirely failed to consider an important aspect of the problem." Compl. ¶¶ 71, 72. Specifically, Plaintiffs allege that the CDC has ignored the cumulative safety of administering more than seventy-two vaccine doses to children. *Id.* In seeking this Court's review, the Complaint is replete with requests for this Court to reweigh the scientific evidence. For instance, Plaintiffs allege that the "temporal correlation is undeniable. The vaccine schedule expanded from 24 doses (1983) to 72+ doses (2025). Chronic illness rates rose in parallel." *Id.* ¶ 50. That Plaintiffs read the data differently is not sufficient to state an arbitrary-and-capricious claim. *See Baystate Franklin Med. Ctr. v. Azar*, 950 F.3d 84, 90 (D.C. Cir. 2020) (rejecting request to consider data the appellant deemed the "most reliable evidence available" where the agency had made a reasoned decision as to the evidence used). Even accepting the (dubious) premise that there is significant uncertainty about the safety of vaccines on the Recommended Schedule, the APA does not require unanimity or certainty in the scientific literature before an agency can act. *FCC v. Prometheus Radio Project*,

141 S. Ct. 1150, 1160 (2021) ("[T]he FCC did not have perfect empirical or statistical data. Far from it. But that is not unusual in day-to-day agency decisionmaking within the Executive Branch.").

It is black-letter law that "an agency must have discretion to rely on the reasonable opinions of its own qualified experts." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989). And when an agency makes a "scientific determination" that is "within its area of special expertise," "a reviewing court must generally be at its most deferential." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983). The D.C. Circuit recently confirmed that it affords deference to an agency's assessment of relevant scientific questions. *Novartis Pharms. Corp. v. Kennedy*, 156 F.4th 626, 629-30 (D.C. Cir. 2025) (deferring to FDA where its analysis turned "squarely on the FDA's expertise in evaluating the clinical significance of drug studies, which we will not lightly second-guess.") (citing *Rempfer v. Sharfstein*, 583 F.3d 860, 867 (D.C. Cir. 2009)). Here, before releasing each update to the Recommended Schedule, CDC relied on the detailed scientific assessment of HHS officials and the ACIP recommendations.

When the Director acts within his delegated statutory authority, the Court should pay due deference and not interfere with his conclusion. *See Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 193 (D.C. Cir. 2023) (applying principle in EPA context) (citing *Appalachian Power Co. v. EPA*, 135 F.3d 791, 802 (D.C. Cir. 1998)). CDC is entitled to that deference here. *Prometheus Radio Project*, 592 U.S. at 425 (upholding agency decision to "rel[y] on the data it had (and the absence of any countervailing evidence) to predict" future effect of agency action). Plaintiffs' challenge is nothing more than an invitation for this Court to oversee policy decisions based on scientific evidence. That is not a claim upon which relief may be granted.

**D.    CDC Did Not Violate the APA by Creating Binding Rules Without Notice-and-Comment Rulemaking.**

The Complaint also alleges that Defendant violated the APA by filing to conduct notice and comment rulemaking before issuing the childhood vaccine recommendations. Compl. ¶ 75. The APA defines "rule making" as an "agency process for formulating, amending, or repealing a rule" and defines a "rule" as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4)-(5). The Recommended Schedule is a set of recommendations, not a directive that sets down a law or regulatory mandate. CDC communications are clear that the schedules are recommendations rather than mandates. The title of the official schedule is: "Recommended Child and Adolescent Immunization Schedule for Ages 18 Years or Younger." https://www.cdc.gov/vaccines/hcp/imz-schedules/downloads/child/0-18yrs-child-combined-schedule.pdf. (last visited Feb. 20, 2026). Publications such as fact sheets reinforce the voluntary nature of these recommendations; a recent fact sheet specified that CDC "[r]ecommends all vaccines for which there is consensus among peer nations." Fact Sheet, CDC Childhood Immunization Recommendations (2026) https://www.hhs.gov/press-room/fact-sheet-cdc-childhood-immunization-recommendations.html (last visited February 20, 2026)

States may or may not follow the CDC's recommendations.  Kaiser Family Foundation, *supra* at 9-10. And the statute authorizing CDC and HHS to advise states and localities imposes no procedural constraints on the agency, let alone a requirement for ACIP consultation. *See* 42 U.S.C. § 243(a). Therefore, the Recommended Schedule is a general statement of policy that does not establish a binding norm, and CDC does not need to engage in notice-and-comment rulemaking before issuing or updating it. 5 U.S.C. § 553; *see Telecomms. Research & Action Ctr. v. FCC,* 800 F.2d 1181, 1186-87 (1986).

III.    **CDC Did Not Violate the Fifth Amendment.**

Plaintiffs purport to challenge CDC's "creation of universal medical standards without scientific basis." Compl. ¶ 83. At this stage, even taking Plaintiffs' allegation that the CDC creates "standards it knows states will enforce" as true, Plaintiffs do not successfully state a claim for a Fifth Amendment due process violation. The concept of substantive due process protects fundamental rights and liberties "which are, objectively, deeply rooted in this Nation's history and tradition." *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). A fundamental right can only be acted upon when the Government uses narrowly tailored means to serve a compelling state interest. *Id*.

The Supreme Court cautions against liberal application of the doctrine of substantive due process. *Glucksberg*, 521 U.S. at 720 (stating the court has always "been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended") (quoting *Collins v. City of Harker Heights, Tex*., 503 U.S. 115, 125 (1992)).

A.    **Plaintiffs Have Not Described a Fundamental Liberty Interest Protected by Substantive Due Process.**

Under *Glucksberg*, courts begin their fundamental rights analysis with a "careful description of the asserted fundamental liberty interest." *Id*. at 721. Then, courts analyze whether the described right is objectively deeply rooted in the Nation's history and tradition. *Id.; see, e.g., Zablocki v. Redhail*, 434 U.S. 374, 383–86 (1978) (recognizing the right to marry); *Moore v. City of East Cleveland*, 431 U.S. 494, 503–06 (1977) (recognizing the right to live with family); *Griswold v. Connecticut*, 381 U.S. 479, 482–86 (1965) (recognizing the right to marital privacy); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925) (recognizing the right of parents to direct children's upbringing and education).

- 26 -

In the medical context, the Supreme Court has recognized that "the law need not give []
doctors unfettered choice in the course of their medical practice." *Gonzales v. Carhart*, 550 U.S.
124, 163 (2007). Indeed, long-established Supreme Court precedent upholds states' rights to
mandate vaccines: in *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905), the Supreme Court
stated: "the police power of a State must be held to embrace, at least, such reasonable regulations
established directly by legislative enactment as will protect the public health and the public safety."
Thus, it determined that a local vaccine requirement did not infringe "any right secured by the
Federal Constitution." *Id.* at 38. Accordingly, the CDC's current work to "assist" states with the
"prevention and suppression of communicable diseases" does not infringe on any Fifth
Amendment liberty interest either.

Although parents have a liberty interest in the care, custody, and control of their children,
*Troxel v. Granville*, 530 U.S. 57, 65 (2000), the CDC's vaccine recommendations do not implicate
this liberty interest. In *Lukaszczyk v. Cook Cty.*, 47 F.4th 587, 602 (7th Cir. 2022), the Seventh
Circuit found that plaintiffs did not demonstrate that the privacy interests involved in "requiring
the administration of an unwanted vaccine" qualified as a fundamental right under substantive due
process. So too with the Recommended Schedule.

The CDC's recommendations are purely advisory, and they recommend considerations of
contraindications and other circumstances; they simply do not force any person to be vaccinated.
For these reasons, a federal agency creating national standards for the consideration of state
legislatures, even where Plaintiffs vociferously disagree with the substance of the standards, does
not implicate a fundamental right. The Complaint likens the facts at issue here to those analyzed
in *Rochin v. California*, 342 U.S. 165, 172 (1952). But these facts bear no similarity to the due
process violations the Supreme Court criticized in *Rochin*, where federal agents illegally broke

- 27 -

into petitioner's home, forcibly opened his mouth and removed what was there, and then forcibly extracted his stomach's contents. *See id.*

B.    **The CDC's Vaccine Recommendations Pass Rational Basis Review.**

Since Plaintiffs' asserted rights are not "fundamental" under the Due Process clause, the applicable standard of review is rational basis review, which is a deferential standard. *Reno v. Flores*, 507 U.S. 292, 293 (1993). Under rational basis review, the legislation under question is constitutional if it is rationally related to a legitimate state interest. *Reno*, 507 U.S. at 293; *see also Slidewaters LLC v. Washington State Dep't of Lab. and Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (identifying public health, safety, morals, or general welfare as legitimate government interests).

The *Lukaszczyk* court determined that employees challenging a vaccine requirement for certain medical providers did not meet their burden under the rational basis standard to show that the challenged policies violated their substantive due process rights. *Lukaszczyk*, 47 F.4th at 603. Here, too, Plaintiffs have failed to meet this burden. Plaintiffs have not pled facts sufficient to show that issuing the Recommended Schedule bears no rational connection to the CDC's legitimate interests of protecting public health by reducing communicable diseases. Accordingly, Plaintiffs have not asserted a cognizable Substantive Due Process claim.

IV.    **CDC Did Not Violate the Fifth Amendment's Equal Protection Guarantee.**

The Fourteenth Amendment's Equal Protection guarantee, applied to the Federal Government through the Due Process Clause of the Fifth Amendment, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954), "requires [the government] to treat similarly situated persons alike," *Women Prisoners of D.C. Dep't of Corrs. v. Dist. of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996); *Pollack v. Duff*, 793 F.3d 34, 45 (D.C. Cir. 2015). When the government treats one group differently from another, the classification must withstand the appropriate level of scrutiny. *Clark v. Jeter*, 486 U.S.

- 28 -

456, 461 (1988). "The Equal Protection Clause addresses all manner of distinctions between persons," *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 308 (2023) (Gorsuch, J., concurring).

Plaintiffs' Fifth Amendment equal protection claim is fundamentally flawed because the CDC immunization schedule does not treat one group differently from another. Plaintiffs' Complaint cites *Bolling v. Sharpe*, 347 U.S. at 497, in support of its claim. Yet in that case, the Court struck down a law with an explicit classification scheme: the challenged law mandated racial segregation in the public schools of the District of Columbia. As Plaintiffs assert, the Recommended Schedule makes no classifications between typical children and so-called "vaccine-vulnerable" children. Compl. ¶ 93 ("The agency refuses to recognize any category of 'vaccine-vulnerable' children despite mounting evidence they exist."). Rather, the Complaint's assertion that "CDC's framework irrationally denies the existence of medically vulnerable children," *id.*, is merely another way to articulate Plaintiffs' disagreement with the medical recommendations made in the Recommended Schedule. Thus, the Court need not look further before dismissing Plaintiffs' equal protection claim.

## V.    CDC Did Not Violate the First Amendment by Punishing or Suppressing Disfavored Viewpoints or Expression.

Plaintiffs allege that the CDC violated the First Amendment by selectively punishing or suppressing disfavored viewpoints or expression. To be sure, when the government is the speaker, it may make content-based choices. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995). And there is no dispute that the government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. *Id. at* 829 (citing *Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). The CDC did not engage in prohibited speech regulation here. Even accepting

Plaintiffs' allegations as true—that the CDC's contraindication criteria operate as "professional speech codes, enforced through state medical boards with career-ending consequences," Compl. ¶ 106—Plaintiffs do not allege that the CDC, the only defendant, enforced these codes.

Nor do they allege that the CDC issued threats to any doctor or group or coerced them to suppress their opinions. Thus, the CDC's conduct here bears no resemblance to that of the regulator in *NRA of America v. Vullo,* 602 U.S. 175 (2024). There, a financial services regulator allegedly pressured regulated entities to help stifle the National Rifle Association's ("NRA") pro-gun advocacy by threatening enforcement actions against those refusing to disassociate from the NRA. *Id.* at 192-93. The regulator had direct regulatory and enforcement authority over these entities. *Id.* at 192. Specifically, she told them that she would "focus" her enforcement actions "solely" on the entities with ties to the NRA, while ignoring other entities selling similar products. *Id.* Plaintiffs' complaint contains no similar allegations as to the CDC's conduct. Indeed, the CDC's publications are clear that the childhood vaccine recommendations contain just that: its recommendations. This is specifically designated in the document's title, "Recommended Child and Adolescent Immunization Schedule for Ages 18 Years or Younger" and reinforced in other publications, such as a fact sheet specifying that CDC "[r]ecommends all vaccines for which there is consensus among peer nations." *See* Fact Sheet, *supra* at 25.

Although Plaintiffs assert that a CDC scientist attempted to expose data manipulation but was "silenced by agency leadership," Compl. ¶ 103, this bare-bones allegation does not suffice to plead a First Amendment claim. Plaintiffs do not provide any specific facts supporting this allegation or allege facts equating to the threats and coercion found problematic in *NRA of America.* Even though the government may violate the First Amendment by acting through others,

Plaintiffs cannot make that showing here. Indeed, Plaintiffs allege no contact between the CDC and any state legislature or state medical board.

Similarly, although the Court has recognized a "First Amendment right to receive information and ideas," this right requires only that the government refrain from engaging in conduct that "impermissibly silences a willing speaker." *Martin v. EPA*, 271 F. Supp. 2d 38, 48 (D.D.C. 2002). Plaintiffs' conclusory allegation that "the CDC has created an unconstitutional system of viewpoint discrimination," Compl. ¶ 106, does not present facts sufficient to state a plausible First Amendment claim that CDC actions silenced willing speakers.

For these reasons, the claim alleging First Amendment violations fails to state a claim and should be dismissed.

*    *    *

**CONCLUSION**

The Complaint is clear that Plaintiffs disagree with CDC policies reflected in the Recommended Schedule. But policy disagreement does not confer standing. Because Plaintiffs do not have standing, and the case against the Recommended Schedule in effect in 2025 is moot, the Court should dismiss this Complaint under Rule 12(b)(1). Furthermore, the Court should dismiss this Complaint under Rule 12(b)(6), as Plaintiffs fail to state claims under the APA, the Fifth Amendment, or the First Amendment.

Dated: February 20, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/ Allison I. Brown*_____
    ALLISON I. BROWN
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-7822

    *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL THOMAS, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>JAY BHATTACHARYA, in his official capacity as Director of the CENTERS FOR DISEASE CONTROL AND PREVENTION,<br><br>　　　　　Defendant. | Civil Action No. 25-2685 (JMC) |

### **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's Motion to Dismiss, and the entire record herein, it is hereby

ORDERED that Defendant's Motion to Dismiss is GRANTED, and it is further

ORDERED that this action is DISMISSED.


SO ORDERED:


_____                    _____
Date                                                         JIA M. COBB
                                                               United States District Judge