UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL THOMAS, *et al.*,<br><br>      Plaintiff,<br><br>   v.<br><br>JAYANTA BHATTACHARYA, in his official capacity as Director of the CENTERS FOR DISEASE CONTROL AND PREVENTION,<br><br>      Defendant. | Civil Action No. 25-2685 (JMC) |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Argument ......................................................................................................................... 2

    I.    Plaintiffs Have Failed to Establish Standing. ......................................................... 2

        A.    The Individual Plaintiffs Do Not Demonstrate Causation. ......................... 2

        B.    The Individual Plaintiffs Do Not Demonstrate Redressability. .................. 6

        C.    The Complaint Does Not Plead Facts Sufficient to Establish Organizational Standing............................................................................... 8

        D.    Plaintiffs Lack Standing to Bring Fifth Amendment Due Process Claims. .................................................................................................... 10

    II.    Plaintiffs Have Failed to Plead an Actionable Administrative Procedure Act Claim.................................................................................................................... 11

        A.    The Agency's Recommendations Are Not Reviewable under the APA. . 11

        B.    Plaintiffs Do Not Challenge Agency Action or Final Agency Action...... 12

        C.    Adoption of the Recommended Schedule Was Not Subject to Notice and Comment Rulemaking. ............................................................................. 13

        D.    Plaintiffs Do Not Adequately Plead an Arbitrary and Capricious Claim. 14

    III.    Plaintiffs Do Not Adequately Plead a Fifth Amendment Claim........................... 15

    IV.    The Complaint Does Not Plead a Fifth Amendment Equal Protection Claim. .... 17

    V.    Plaintiffs Do Not Plead Facts Supporting a First Amendment Claim for Selectively Punishing or Suppressing Disfavored Viewpoints or Expression...... 17

    VI.    *Braidwood* Is Inapposite. ...................................................................................... 19

Conclusion ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abigail All. For Better Access to Developmental Drugs v. von Eschenbach*,
 495 F.3d 695 (D.C. Cir. 2007) ............................................................................... 16

*Am. Hosp. Ass'n v. Bowen*,
 834 F.2d 1037 (D.C. Cir. 1987) ............................................................................. 13

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
 462 U.S. 87 (1983) ................................................................................................. 14

*Biden v. Texas*,
 597 U.S. 785 (2022) ............................................................................................... 12

*California v. Texas*,
 593 U.S. 659 (2021) ................................................................................................. 8

*Clark v. Jackson*,
 2023 U.S. App. LEXIS 8318 (6th Cir. 2023) ....................................................... 16

*Clark v. Jeter*,
 486 U.S. 456 (1988) ............................................................................................... 17

*Council for Urological Interests v. Burwell*,
 790 F.3d 212 (D.C. Cir. 2015) ............................................................................. 14

*Drake v. F.A.A.*,
 291 F.3d 59 (D.C. Cir. 2002) ............................................................................... 11

*FCC v. Prometheus Radio Project*,
 592 U.S. 414 (2021) ............................................................................................... 15

*Fund for Animals, Inc. v. Bureau of Land Mgmt.*,
 460 F.3d 13 (D.C. Cir. 2006) ............................................................................... 12

*Hearst Radio, Inc. v. FCC*,
 167 F.2d 225 (D.C. Cir. 1948) ............................................................................. 12

*Heckler v. Chaney,*
 470 U.S. 821 (1985) ............................................................................................... 11

*Jacobson v. Mass.*,
 197 U.S. 11 (1905) ........................................................................................... 15, 16

*Kennedy v. Braidwood Mgmt., Inc.*,
 606 U.S. 748 (2025) ......................................................................................... 19, 20

*Klaassen v. Trs. of Indiana Univ.*,
 7 F.4th 592 (7th Cir. 2021) ................................................................................... 16

*Lincoln v. Vigil*,
 508 U.S. 182 (1993) ......................................................................................... 11, 13

*Lucas v. D.C. Water,*
    Civ. A. No. 22-677 (RJL), 2024 U.S. Dist. LEXIS 166610 (D.D.C. Sep. 16, 2024) .................... 15, 16

*Lujan v. Def. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................................... 9

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ......................................................................................................... 12

*Lukaszczyk v. Cook Cty.,*
    47 F.4th 587 (7th Cir. 2022) ............................................................................................ 16

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau,*
    785 F.3d 684 (2015) ........................................................................................................... 6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................................... 14

*Diamond Alternative Energy, LLC v. EPA,*
    606 U.S. 100 (2025) ........................................................................................................... 5

*Phillips v. City of New York,*
    775 F.3d 538 (2d Cir. 2015) ............................................................................................ 16

*Renal Physicians Ass'n v. Dep't of Health & Hum. Servs.,*
    489 F.3d 1267 (D.C. Cir. 2007) ......................................................................................... 9

*Reno v. Flores,*
    507 U.S. 292 (1993) ......................................................................................................... 16

*Rust v. Sullivan,*
    500 U.S. 173 (1991) ......................................................................................................... 19

*Scenic Am., Inc. v. Dep't of Transportation,*
    836 F.3d 42 (D.C. Cir. 2016) ............................................................................................. 9

*Seven Cty. Infrastructure Coal. v. Eagle Cty.,*
    605 U.S. 168 (2025) ......................................................................................................... 15

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ........................................................................................................... 3

*Union of Concerned Scientists v. Wheeler,*
    954 F.3d 11 (1st Cir. 2020) ......................................................................................... 11, 12

**Statutes**

5 U.S.C. § 551 ........................................................................................................................ 12

5 U.S.C. § 553 ........................................................................................................................ 13

5 U.S.C. § 1004 ...................................................................................................................... 11

5 U.S.C. §§ 702, 704 .............................................................................................................. 12

42 U.S.C. § 243 ............................................................................................................ 11, 12, 14

42 U.S.C. § 264 ...................................................................................................................... 14

42 U.S.C. § 300gg-13 ............................................................................................................... 6

In this matter, Plaintiffs challenge the Centers for Disease Control and Prevention's ("CDC") Recommended Childhood and Adolescent Immunization Schedule ("Recommended Schedule") under the Administrative Procedure Act ("APA"), the Fifth Amendment, and the First Amendment. Plaintiffs' Complaint should be dismissed, in its entirety, for lack of subject-matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6).

First, the Court should dismiss this Complaint because Plaintiffs lack Article III standing. Plaintiffs' opposition fails to support their argument that CDC caused their injury because actions by state entities were dictated by the CDC Recommended Schedule. Rather, state entities relied on actions and facts outside of the Recommended Schedule as well as their independent judgment. Plaintiffs' opposition also fails to establish that the organizational Plaintiff is diverting resources to support families or develop resources because of the Recommended Schedule rather than because of state public health laws that require immunizations for children. Nor does Plaintiffs' opposition demonstrate that the requested relief would redress their purported harm.

The Court also should dismiss this Complaint because Plaintiffs fail to state an APA claim, as the matter at issue here is a matter of agency discretion, there is no final agency action to review, and to the extent the decision to issue the Recommended Schedule is considered a rule, the decision making was not arbitrary or capricious. Nor do Plaintiffs successfully state a Fifth Amendment substantive due process claim or equal protection claim. Plaintiffs claim that the CDC violated the due process standards because it created medical standards without scientific basis that it knows states will enforce. This assertion does not support a finding of any deprivation of a constitutional right or that the agency activity at issue fails rational basis review. Plaintiffs also fail to state a claim for First Amendment viewpoint suppression based on their assertions that the CDC's

Recommended Schedule, purportedly enforced through state entity actions, suppressed lawful expression.

**ARGUMENT**

### I.     Plaintiffs Have Failed to Establish Standing.

Neither the individual Plaintiffs nor the organizational Plaintiff can show that the challenged conduct has caused them any cognizable injury or that a favorable decision would likely redress any injury. The alleged injuries of the individual Plaintiffs are traceable to state laws and the state agencies governing medical licenses, over which the CDC has no control or involvement. And the organizational Plaintiff's allegations do not meet the minimum standards for organizational standing.

Defendant's motion to dismiss also argued that this action is moot, Def.'s Mem. at 16-20, but upon further consideration, and based on current circumstances, Defendant is not continuing to assert that defense.

### A.     The Individual Plaintiffs Do Not Demonstrate Causation.

Defendant's motion to dismiss established that the alleged injury each individual plaintiff purportedly suffered is traceable to state legislation imposing immunization requirements and empowering medical boards to regulate medical licenses, and the actions of the corresponding state agencies governing medical licenses, not to the CDC's actions. Def.'s Mem. at 8-11. Plaintiffs' opposition does not dispute that state legislation imposes the immunization requirements and empowers medical boards, or that the corresponding agencies revoked the individual Plaintiffs' medical licenses. Opp'n at 5. Rather, Plaintiffs argue that these actions by state entities were grounded in the CDC Recommended Schedule that was in effect when the individual Plaintiffs lost their medical licenses. *Id.*

- 2 -

Specifically, the opposition states that the California Medical Board revoked Plaintiff Stoller's license for "deviating from" the Advisory Committee on Immunization Practices ("ACIP") standard of care. *Id*. Even if this were accurate, it does not establish that the CDC caused the revocation, as the CDC did not revoke Stoller's license or direct any state to do so. The CDC simply made nonbinding recommendations, and California and other states could choose whether and how to use those recommendations in regulating the practice of medicine. Thus, Stoller's purported injury is not traceable to CDC's conduct. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Plaintiffs also mischaracterize the decisions of both the medical board and the reviewing state court. The medical board charged Stoller with four separate charges. *Stoller v. Medical Bd. of Cal.*, 2021 Cal. Super. LEXIS 108488, at *6 (Sacramento Cnty. Super. Ct. Sept. 13, 2021). Three were based on "gross negligence, repeated negligent acts and incompetence," specifically: performing genetic testing to determine whether children should be exempted from vaccinations, obtaining and relying on unverified patient and family histories, and writing exemptions from all immunization requirements. *Id.* at *6-8. It also charged Stoller with failing to maintain adequate and accurate records. *Id.* at *8. Although the Board's decision referenced the ACIP guidelines as the standard of care, *id.,* deviation from that standard of care was not the sole basis for revocation. Instead, the failure to verify patients' medical histories and maintain required records were independent bases for the license revocation, and these offenses are wholly independent of the ACIP guidelines. *Id.*

The California Superior Court, in reviewing the Medical Board of California's decision, determined that California law contemplates immunization exemptions "predicated on medically supported, professional judgment *not strictly limited* to contraindications in the ACIP Guidelines."

*Id*. at \*16-17 (emphasis added). Plaintiffs' opposition completely disregards the fact that the court interpreted state law to allow doctors to use their professional judgment without being limited to the contraindications in the ACIP guidelines. Moreover, the Superior Court sustained the license revocation because it found that the medical board had supported its findings that certain patient medical histories on which Stoller relied were not relevant to the patient's medical care, he "misdiagnosed and exaggerated patients' conditions," and he improperly failed to investigate or otherwise substantiate parents' reporting of patient health histories. *Id.* at \*24-25. To be sure, the Recommended Schedule does not speak to the exaggeration of medical conditions or the standards for investigating parent or patient health history statements during a medical examination. Thus, it is clear that the medical board revoked Stoller's license, and the Superior Court sustained the license revocation, for reasons separate and apart from the specific recommendations in CDC's Recommended Schedule.

Nor have Plaintiffs plausibly alleged that the Recommended Schedule caused Thomas's license revocation. He also was subject to multiple charges, specifically: unprofessional or dishonorable conduct, making false or misleading statements regarding the efficacy of the licensee's treatments, repeated negligence and gross negligence in the practice of medicine, and knowingly making a false statement or representation on a matter, among other allegations. *In the Matter of Paul Norman Thomas, M.D.*, Stipulated Order 2-3 (Oct. 6, 2022), omb.oregon.gov/Clients/ORMB/OrderDocuments/3f4010d3-92d5-43bb-bd1b-2c16b24260f0.pdf. Because the Recommended Schedule does not speak to negligence or knowingly making false statements, Plaintiffs fail to support their argument that the CDC caused Thomas's purported injury. Indeed, the negligence charges go well beyond Thomas's immunization practices; for example, the relevant order alleges that Thomas "breached the

- 4 -

standard of care" in treating a sick patient by "failing to refer" the patient to the Emergency Room or hospital for appropriate testing and observation in light of his illness. *In the Matter of Paul Norman Thomas, M.D.*, Order of Emergency Suspension 3 (June 3, 2021), https://omb.oregon.gov/Clients/ORMB/OrderDocuments/e579dd35-7e1b-471f-a69a-3a800317ed4c.pdf. Moreover, the "standard of care" that the medical board used to evaluate Thomas's actions considered "sources that are well recognized in the medical community and are relied upon by physicians in their delivery of care to patients," not limited to the Recommended Schedule. *Id.* at 1.

Plaintiffs' opposition also states that these doctors could "apply for licensure in jurisdictions where shared clinical decision-making is already the norm under the Kennedy HHS reforms." Opp'n at 10. This concession confirms that states determine immunization requirements, not the CDC.

Plaintiffs' reliance on *Diamond Alternative Energy, LLC v. EPA,* 606 U.S. 100, 112-13 (2025), is misplaced. There, the Court evaluated plaintiff gasoline producers' contention that upholding a regulation forcing automobile makers to manufacture more electric vehicles would cause monetary injury to gasoline producers, as fewer gasoline-powered vehicles would be sold if the regulation went into effect. *Id.* at 120. The Court relied on "commonsense economic principles" and declarations from marketplace participants to support the conclusion that upholding the regulation would cause financial injury to gasoline producers, where they would make less money if car manufacturers produced fewer gasoline-powered vehicles. Here, no "commonsense economic principle[]" or marketplace evidence supports standing. Rather, Plaintiffs argue that their injuries were caused by the CDC because a state medical board "followed ACIP" in the past. Opp'n at 6. However, in contrast to the almost certain injury to gasoline producers if a large state

- 5 -

requires automobile manufacturers to produce more electric vehicles, it is not inevitable that state medical boards will revoke medical licenses based on changes to the specific immunizations listed in the Recommended Schedule. In fact, the relevant medical boards took actions against Plaintiffs Stoller and Thomas based on reasons outside of the specific recommendations in the CDC's Recommended Schedule, and the reviewing state court determined that state law allows doctors to support exemptions based on medically supported, professional judgment not limited to contraindications in the Recommended Schedule. *See Stoller*, 2021 Cal. Super. LEXIS 108488, at *16-17. Thus, the revocation of Plaintiffs' medical licenses was not caused by the CDC.

Plaintiffs also point to the Affordable Care Act's ("ACA") requirement that most group health insurance plans must cover immunizations on the Recommended Schedule without cost-sharing. Opp'n at 8; 42 U.S.C. § 300gg-13(a)(2). Yet Plaintiffs do not, and cannot, allege that the ACA requirement has a direct or appreciable impact on their rights as doctors. Thus, the cited ACA requirements do not show the CDC caused Plaintiffs' purported injury.

Furthermore, even if the Court finds that the individual Plaintiffs met their burden as to causation for past harm, a demonstration of past harm does not establish standing for the forward-looking relief Plaintiffs seek. *See, e.g., Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 689 (2015) (dismissing complaint seeking forward-looking relief where plaintiff did not demonstrate that there was a "substantial risk" that future harm would occur). The individual Plaintiffs do not establish that the CDC's Recommended Schedule is causing them future harm, as numerous states, including the states where Plaintiffs practice, recently have explicitly decoupled their laws from CDC Recommendations. *See* Def.'s Mem. at 9-10.

**B.      The Individual Plaintiffs Do Not Demonstrate Redressability.**

The individual plaintiffs also have not shown that the requested relief would likely redress their alleged injuries. If this Court enters an order directing the CDC to conduct new studies on

immunization safety, that action would not result in Plaintiffs Stoller and Thomas receiving new state medical licenses, as the medical boards are not parties to this suit. Moreover, it is completely speculative whether new studies on immunization safety would lead to changes in the Recommended Schedule or state laws. Additionally, Plaintiffs state that the Oregon Medical Board will reinstate Thomas's license if this Court orders the CDC to re-evaluate the Recommended Schedule. Opp'n at 9. Yet in an order entered on October 6, 2022, Thomas agreed that he "will never reapply for a license to practice medicine in Oregon." *Paul Norman Thomas*, Stipulated Order 2. Thus, Thomas will not be able to apply to the Oregon medical board to obtain a license, even if this Court grants Plaintiffs' requested relief as to the CDC.

In their opposition, Plaintiffs assert that Defendant cannot use recent state legislative changes to argue that the 2020–21 enforcement actions were not traceable to the federal framework in effect at the time. Opp'n at 7. Although Plaintiffs' assertion might have more force if their claims were time-bound and limited to the CDC recommendations in effect in 2020-21, when the license revocations took place, it does not appear that Plaintiffs' claims are limited to that time period. And Plaintiffs offer no argument that a future court-ordered CDC announcement that it reclassifies "all childhood vaccines to Category B shared clinical decision-making," Compl., Request for Relief, p. 26, would lead California or Oregon to adopt such CDC guidance in their state laws or regulatory requirements. Thus, Plaintiffs wholly fail to make the required redressability showing.

Plaintiffs also argue that third-party reactions to a court order favorable to them are "predictable" and "documented," based on pre-2025 state activity. Opp'n at 8. In making this assertion, Plaintiffs fail to acknowledge that California and Oregon's past actions were based not only on the CDC Recommended Schedule but also on the schedule's alignment with the states'

preferred immunization policies. Plaintiffs acknowledge that certain states have recently decoupled their immunization policy from CDC recommendations. *Id.* at 6. In fact, fifteen states have sued this agency seeking to compel CDC to revert back to its 2025 immunization policies. *See State of California v. Kennedy,* Civ. A. No. 26-1609 (N.D. Cal.), Compl. ¶ 10 (calling the January 2026 changes a "radical change to the science-based childhood immunization schedule"). Thus, if the CDC in the future issues a Recommended Schedule that contradicts these states' preferred vaccine policies, it is not predictable that the states will immediately defer to the CDC, and Plaintiffs have not made any showing that they will.

> **C.      The Complaint Does Not Plead Facts Sufficient to Establish Organizational Standing.**

Defendant showed that Stand for Health Freedom ("SHF") has not pled facts sufficient to establish organizational standing. Def.'s Mem. at 13-16. Plaintiffs state that SHF's "core mission is supporting families navigating school vaccine mandates, developing resources for parents seeking medical exemptions, and coordinating state-level advocacy for informed consent laws." Opp'n at 16 (citing Compl. ¶¶ 14, 32). This core mission is indistinguishable from the work that it characterizes as a diversion of resources: supporting "families being excluded from school, parents denied informed consent, physicians unable to provide individualized guidance." *Id.* at 11. Moreover, SHF does not plead facts demonstrating that it is diverting "substantial resources" to any particular type of support, parental resources, or physician resources. Nor does it plead facts showing that it is diverting any resources at all to support families or develop resources because of CDC's Recommended Schedule rather than because of state public health laws that require vaccinations for children. Any injury is not traceable to the CDC's actions where "other provisions," unchallenged in this lawsuit, "impose these other requirements" that cause Plaintiffs' alleged injury. *California v. Texas*, 593 U.S. 659, 678 (2021) (plaintiffs did not establish standing

to challenge the ACA's health insurance coverage mandate where the costs they incurred were traceable to other parts of the ACA).

SHF also fails to demonstrate that the requested remedy would redress any harm. When "undoing of the governmental action will not undo the harm," even if the challenged conduct was "a substantial contributing factor in bringing about a specific harm," no likelihood of redressability exists. *Renal Physicians Ass'n v. Dep't of Health & Hum. Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007). In *Lujan v. Def. of Wildlife*, 504 U.S. 555, 571 (1992), the Court held that plaintiffs had not established redressability where they sued the Secretary of the Interior, challenging a regulatory change that eliminated the need for other federal agencies to consult with Department of the Interior before undertaking specific development projects. There, "any relief the District Court could have provided in this suit against the Secretary was not likely to produce th[e] action" necessary to redress the alleged injury because redressability required action by the individual agencies funding the development projects. *Id.* Here, redressability of the alleged harm requires actions by the states rather than the federal government.

Similarly, in *Scenic Am., Inc. v. Dep't of Transportation*, 836 F.3d 42, 52–53 (D.C. Cir. 2016), the D.C. Circuit held that the plaintiff had not established that voiding the agency action "would improve or ease" its injury, where the organization asserted that it would need to expend greater resources fighting the operation of digital billboards but did not demonstrate that if the Court vacated the guidance at issue, the agency would "respond by preventing the state it oversees from erecting digital billboards," nor had the plaintiff established that "states would successfully erect, or even seek to erect, fewer billboards." *Id.* at 51. Thus, the guidance at issue was not an "absolute barrier" to the organization's efforts. *Id.* at 53. Similarly here, SHF has not pled facts establishing that amending the Recommended Schedule would remove an "absolute barrier" to its

efforts, as states are free to maintain or change their immunization laws or regulations regardless of what CDC recommends in the Recommended Schedule. *See id.* at 53. Even if the CDC's recommendations change, many states are likely to maintain their vaccination requirements, and SHF presumably will have to expend resources to support families navigating school vaccination requirements across states, develop resources for parents seeking medical exemptions, and coordinate state-level advocacy for informed consent laws, in numerous states. Nor does the ACA's requirement that most group health insurance plans cover immunizations on the Recommended Schedule without cost-sharing cause the organization any injury. Plaintiffs can only speculate that states or state medical boards would have acted differently with respect to required immunizations in the past, or would act differently with respect to immunization requirements in the future, if, as Plaintiffs request, CDC were enjoined from maintaining any so-called Category A recommendations for childhood vaccines and reclassified all childhood vaccines to so-called Category B shared clinical decision-making.

### D.      Plaintiffs Lack Standing to Bring Fifth Amendment Due Process Claims.

Plaintiffs' opposition fails to establish that they have standing to bring their Fifth Amendment claims. Opp'n at 11. In their Complaint, Plaintiffs cite due process violations related to deprivation of parents' rights, specifically parents' right to "informed consent that is the cornerstone of medical ethics and constitutional liberty." Compl. ¶ 105. Plaintiffs' opposition takes a different tack, arguing that the alleged Fifth Amendment due process violation is based on their "property interest in medical licenses" or their "liberty interest in practicing the profession." Opp'n at 11-12. But for the reasons discussed above, any purported harms to Plaintiffs' property interest in their medical licenses or liberty interest in practicing their profession are not caused by the CDC and are not redressable by the requested relief. Thus, Plaintiffs do not have standing to bring the asserted Fifth Amendment claims against the CDC.

- 10 -

## II.     Plaintiffs Have Failed to Plead an Actionable Administrative Procedure Act Claim

### A.     The Agency's Recommendations Are Not Reviewable under the APA.

Defendant established in its motion to dismiss that CDC issues the Recommended Schedule as part of its discretionary activities to "assist" states with the "prevention and suppression of communicable diseases," "cooperate" with states in the enforcement of their health regulations, and provide advice to the states on "matters relating to the preservation and improvement of the public health." Def.'s Mem. at 20-21 (citing 42 U.S.C. § 243). The APA bars review "when the matter in dispute has been 'committed to agency discretion by law.'" *Drake v. F.A.A.*, 291 F.3d 59, 70 (D.C. Cir. 2002) (quoting 5 U.S.C. § 701(a)(2)). The discretionary bar applies when the statute in question is "drawn in 'such broad terms that in a given case there is no law to apply.'" *Id*. As in *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) (enforcement decisions) and *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (spending decisions), issuing public health recommendations to support states is a discretionary function. It requires balancing of factors that are within the agency's expertise as well as evaluating whether particular immunization recommendations are likely to succeed in fulfilling the statutory mandate of assisting states in protecting public health. Thus, Plaintiffs' APA claim is not subject to judicial review.

Indeed, Plaintiffs do not cite a single case from this District in support of their argument that the Recommended Schedule is reviewable. Plaintiffs cite *Union of Concerned Scientists v. Wheeler,* 954 F.3d 11, 20 (1st Cir. 2020), a case that involves the standards under the Federal Advisory Committee Act ("FACA"). Yet the standards at issue there are not nearly as broad as those at issue here. The FACA standards "require the membership of [any] advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. § 1004(b)(2). Although the phrase "fairly balanced in terms of the points of view represented" leaves some room for discretion, the court identified certain

- 11 -

objective criteria to determine balance, such as evaluating whether the committee was composed mostly of members from regulated industries. *Union of Concerned Scientists,* 954 F.3d at 20. In contrast, Congress's directive to CDC to advise on "matters relating to the preservation and improvement of the public health," 42 U.S.C. § 243, is much broader and does not provide any standard to guide the Court in evaluating the agency's exercise of discretion. Therefore, the Court should dismiss Plaintiffs' APA claims.

### B.    Plaintiffs Do Not Challenge Agency Action or Final Agency Action.

Defendant established that adopting the Recommended Schedule does not qualify as final agency action. Def.'s Mem. at 21-22. The APA "does not provide judicial review for everything done by an administrative agency." *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948). Two "threshold questions" for every APA claim are "[w]hether there has been 'agency action'" and then "'final agency action' within the meaning" of 5 U.S.C. §§ 702 and 704. *Fund for Animals, Inc. v. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). "[I]f these requirements are not met," the APA claim "is not reviewable." *Id*. The APA defines an "agency action" as the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof. 5 U.S.C. § 551(13). But courts have long recognized that activities in anticipation of agency action, such as preparing proposals or conducting studies, are not reviewable. *Id.*

Plaintiffs claim they do not challenge a specific list of vaccines, but instead the CDC's alleged failure to study the cumulative safety of the childhood vaccination schedule. Opp'n at 13. This dooms their APA claim. The APA does not authorize review of "abstract decision[s] apart from specific agency action." *Biden v. Texas,* 597 U.S. 785, 809 (2022). A plaintiff "cannot seek wholesale improvement" of a government program by court order rather than challenging a specific agency action. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

Count I(B) of the Complaint contradicts Plaintiffs' statement in the opposition, alleging, "CDC violated the APA by creating binding rules without notice-and-comment rulemaking. . . . Plaintiffs seek a declaration that CDC's recommendation of the childhood vaccine schedule violates the APA." Compl. ¶¶ 75, 77. To the extent the Court focuses on these allegations rather than the statement in Plaintiffs' opposition, the Recommended Schedule is not a final agency action for the reasons explained in Defendant's motion to dismiss. *See* Def.'s Mem. at 21-22.

### C.      Adoption of the Recommended Schedule Was Not Subject to Notice and Comment Rulemaking.

Defendant's motion to dismiss established that CDC was not required to engage in notice-and-comment rulemaking before issuing or updating the Recommended Schedule. *Id.* at 25. The APA provides certain exceptions to notice and comment rulemaking; those requirements do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). General statements of policy "advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Vigil*, 508 U.S. at 197 (internal quotation marks omitted). A directive that does not establish a "binding norm" and leaves agency officials free to exercise their discretion qualifies as a general statement of policy. *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046 (D.C. Cir. 1987). The Recommended Schedule does not bind CDC to take any specific action and leaves agency officials free to exercise their discretion in advising states on the preservation and improvement of the public health. Therefore, it is a "general statement of policy" and did not need to go through notice-and-comment rulemaking.

Indeed, Congress has not directed or explicitly authorized CDC to issue regulations establishing recommended immunizations. In contrast, Congress has issued numerous directives to CDC to regulate in specific areas. For example, Congress has explicitly authorized the CDC to

- 13 -

"make and enforce such regulations" needed to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the United States. 42 U.S.C. § 264(a). In the absence of a statutory direction to promulgate "regulations," it should be presumed that Congress intended for the CDC to be able to exercise its public health advisory authority without doing so. *See, e.g., Council for Urological Interests v. Burwell,* 790 F.3d 212, 221 (D.C. Cir. 2015) (inclusion of language in one statutory exception and omission of the same language in another "suggest[s] that the omission in this particular context was deliberate"). Here, Congress authorized the CDC to "assist" and "advise," saying nothing about making regulations or engaging in the notice-and-comment regulatory process. 42 U.S.C. § 243(a). Thus, the Court should presume that Congress intended the CDC to exercise its authority to "assist" and "advise" the states without promulgating regulations.

### D.    Plaintiffs Do Not Adequately Plead an Arbitrary and Capricious Claim.

Defendant demonstrated that Plaintiffs have not successfully pled an arbitrary and capricious claim, as nothing about the Recommended Schedule falls outside the bounds of the substantial deference accorded to agencies under arbitrary-and-capricious review. Def.'s Mem. at 23-25. Plaintiffs argue that the Recommended Schedule is arbitrary and capricious because CDC has never studied the cumulative safety of the childhood vaccine schedule. Opp'n at 18. However, the case that Plaintiffs cite acknowledged that "[i]t is not infrequent that the available data does not settle a regulatory issue and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). And when an agency "is making predictions, within its area of special expertise, . . . a reviewing court must generally be at its most deferential." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983). CDC is entitled to that deference here. The governing statute leaves it to CDC's discretion to determine

- 14 -

the appropriate factors in advising states and localities on public health. And the agency, staffed with scientific experts, is better equipped than a court to assess what facts are relevant in exercising that discretion. *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 605 U.S. 168, 181 (2025) (upholding agency decision to issue environmental impact statement challenged for its lack of detail where agency determined which facts were relevant to its decision). CDC reasonably exercised its discretion here, including because publicly available documents show that CDC's decision making was supported by thorough scientific analyses. *See, e.g.,* ACIP Recommendations and Guidelines, https://www.cdc.gov/acip-recs/hcp/vaccine-specific/index.html; ACIP Presentation Slides: April 15-16, 2025 Meeting, https://www.cdc.gov/acip/meetings/presentation-slides-april-15-16-2025.html. The Court "simply ensures the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project,* 592 U.S. 414, 423 (2021). Therefore, this Court should dismiss Count I of the Complaint claiming that CDC's decision making was arbitrary and capricious.

III.     **Plaintiffs Do Not Adequately Plead a Fifth Amendment Claim.**

To establish a substantive due process claim, a plaintiff must allege the deprivation of a constitutional right and show that the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lucas v. D.C. Water*, Civ. A. No. 22-677 (RJL), 2024 U.S. Dist. LEXIS 166610, at *7-8 (D.D.C. Sep. 16, 2024). Here, Plaintiffs fail to state such a claim. In terms of deprivation of a constitutional right, Plaintiffs cite no authority indicating that their "property interest in medical licenses" or their "liberty interest in practicing the profession" are rights that outweigh the need for reasonable state legislation that protects the public health and the public safety. *See Jacobson v. Mass.*, 197 U.S. 11, 25 (1905).

The D.C. Circuit has not directly addressed whether immunization requirements implicate a fundamental right, but federal courts have consistently held that they do not. *See, e.g., Lucas*,

2024 U.S. Dist. LEXIS 166610, at *9 (holding that immunization requirements enacted to protect public health and public safety do not implicate fundamental rights, where the plaintiffs asserted that the public employer's mandatory immunization policy violated their rights to make personal decisions about their medical treatment); *see also Lukaszczyk v. Cook Cty.*, 47 F.4th 587, 601 (7th Cir. 2022); *Klaassen v. Trs. of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *Clark v. Jackson*, 2023 U.S. App. LEXIS 8318, at *13-14 (6th Cir. 2023); *Phillips v. City of New York*, 775 F.3d 538, 542-43 (2d Cir. 2015). And Plaintiffs cite no case establishing or even suggesting that a property interest in a medical license or liberty interest in practicing the profession would be entitled to more weight than the individual's right to make personal decisions about medical treatment that the *Lucas* court evaluated.

Because Plaintiffs' asserted rights are not "fundamental" under the Due Process clause, the applicable standard of review is rational basis review, which is a deferential standard. *Reno v. Flores*, 507 U.S. 292, 293 (1993). Under rational basis review, the legislation or regulation in question is constitutional if it is rationally related to a legitimate state interest. *Id.* Under that standard, the Court considers whether the Recommended Schedule lacks a "real or substantial relation" to public health and safety, whether it is "beyond all question, a plain palpable invasion of rights secured by fundamental law," and whether it is so arbitrary and oppressive as to warrant judicial interference. *See id.*; *Jacobson*, 197 U.S. at 31-38. Here, the Recommended Schedule passes rational basis scrutiny because Plaintiffs fail to demonstrate that it "bear[s] no rational relationship to a legitimate state interest." *Abigail All. For Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 712 (D.C. Cir. 2007). "Prevent[ing] the spread of contagious diseases" is undeniably a legitimate state interest. *See Jacobson*, 197 U.S. at 35. There is a rational relationship between recommending the immunizations on the schedule and the legitimate state

- 16 -

interest of preventing communicable diseases. Even taking the Complaint's allegations as true, the challenged action passes rational basis review, and Plaintiffs fail to plead sufficient facts to sustain a Fifth Amendment claim.

## IV.    The Complaint Does Not Plead a Fifth Amendment Equal Protection Claim.

Defendant established that Plaintiffs' Fifth Amendment equal protection claim must be dismissed because the Recommended Schedule does not treat one group differently from another. Def.'s Mem. at 28-29. When the government treats one group differently from another, the classification must withstand the appropriate level of scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Yet the CDC immunization schedule does not treat one group differently from another. The opposition does not cite a single case in support of Plaintiffs' position that they have stated an equal protection claim under the Fifth Amendment on the basis that the Recommended Schedule "treats all children as medically identical." Opp'n at 23. This assertion does not sustain Plaintiffs' unsupported claim, and therefore the Court should dismiss Count II of the Complaint.

## V.    Plaintiffs Do Not Plead Facts Supporting a First Amendment Claim for Selectively Punishing or Suppressing Disfavored Viewpoints or Expression.

Defendant established that Plaintiffs have not pled sufficient facts to show that the government threatened any doctor or group or coerced them to suppress their opinions. Def.'s Mem. at 29-31. Plaintiffs acknowledge that the CDC has not "telephoned state medical boards and directed them to revoke licenses." Opp'n at 23. Instead, they argue that the CDC created a contraindications framework "so narrow that any physician who exercises individualized clinical judgement" contrary to the framework "faces automatic professional consequences through the states that have incorporated that framework into binding law." *Id.* (citing *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 67 (1963)). But *Bantam Books* is inapposite. There, state legislation created a commission that applied "informal sanctions" based on the state's obscenity laws against books

"that were not obscene" within the legal definition. *Id.* at 64-65. Here, the Complaint does not allege that CDC has applied any formal or informal sanctions under laws curtailing speech based on its subject matter or content. Nor could it, where the Recommended Schedule provides assistance to states in preventing and suppressing communicable diseases but does not impose content restrictions on speech.

In any event, the conclusory statement in the Opposition that doctors face "automatic professional consequences" is contradicted by allegations in the Complaint, allegations that are clear that any constraints on doctors are imposed by the state medical boards based on separate processes. Compl. ¶ 7. The states and state medical boards act independently in the public health arena, as described above; for example, California law allows immunization exemptions "predicated on medically supported, professional judgment not strictly limited to contraindications in the ACIP Guidelines." *Stoller*, 2021 Cal. Super. LEXIS 108488, at *16-17. Recently, fifteen states have demonstrated their independence by suing the CDC seeking to compel it to revert back to its 2025 immunization policies. *See generally* Compl., *State of California v. Kennedy,* Civ. A. No. 26-1609.

Plaintiffs try to connect the CDC's actions to state medical board revocations of medical licenses, but even if CDC recommendations may influence state medical commissions, losing medical licenses did not limit Plaintiffs' ability to express their viewpoints in public. The individual Plaintiffs may believe their views are less credible to the public because Plaintiffs are not licensed doctors, but if so, that is not an issue of free speech. Nothing in the First Amendment gives any person a right to more credible speech; rather, the First Amendment merely prohibits the government from infringing upon a person's freedom to engage in protected speech. And the

- 18 -

Complaint does not allege that the CDC punished or suppressed the views of SHF in response to the organization expressing its viewpoints. *See generally* Compl.

Moreover, the Complaint does not establish that CDC would have acted any differently had Plaintiffs not been engaged in expressing views that did not align with the agency's views. Plaintiff cites no case establishing that a so-called "system of viewpoint suppression, enforced … through the predictable mechanism of state regulatory adoption" amounts to First Amendment viewpoint suppression. *See* Opp'n at 24. Indeed, government agencies routinely take positions on issues with which some members of the public disagree, and doing so does not discriminate against the dissenter or otherwise violate his rights. *See, e.g., Rust v. Sullivan*, 500 U.S. 173, 193 (1991) ("The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other."). In sum, Plaintiffs' allegations do not amount to discrimination against dissenters' viewpoints.

## VI.     *Braidwood* **Is Inapposite.**

Plaintiffs contend that *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025), "described ACIP's authority as binding." Opp'n at 4. Not so. In *Braidwood*, the Supreme Court analyzed the responsibilities and legal authority of the U.S. Preventive Services Task Force ("Task Force") and whether the Task Force members were principal officers or inferior officers of the United States under the Constitution's Appointments Clause. The Appointments Clause was implicated in the first place because the Task Force had "ceased to be an advisory committee" after Congress enacted the ACA. *Id*. at 766 n.3. The Task Force's "recommendations were no longer merely advisory," since "health insurers had to begin covering those recommended services at no cost to

the insured." *Id*. at 783. Although the Secretary "can review the Task Force's recommendation and block it from going into effect," *id*. at 757, he is not required to do so, and the Task Force's recommendations become "binding" if the Secretary does not block them. *Id*. at 766 n.3.

By contrast, an ACIP recommendation is "not 'considered in effect' until 'it has been adopted by'" the CDC Director. *Id*. at 767 n.4 (quoting 45 C.F.R § 147.130(a)(1)(ii)). *Braidwood* explained that the Secretary "'ha[s] the *discretion* to review decisions rendered by' the Task Force" by establishing a similar review structure, which makes Task Force members inferior officers under the Appointments Clause. *Id*. at 767–68 (quoting *United States v. Arthrex, Inc.*, 594 U.S. 1, 27 (2021)). But a critical difference between the Task Force and the ACIP remains: recommendations from the Task Force can be binding on their own, but recommendations from the ACIP cannot.

\*     \*     \*

**CONCLUSION**

This Court should dismiss Plaintiffs' Complaint under Rule 12(b)(1) for lack of standing because Plaintiffs cannot show injury in fact that is caused by Defendant's conduct, or a likelihood that a favorable decision will redress the injury. The Court also should dismiss the Complaint under Rule 12(b)(6) because Plaintiffs fail to state an APA claim, a Fifth Amendment claim, or a First Amendment claim.

Dated:  April 6, 2026                          Respectfully submitted,

                                              JEANINE FERRIS PIRRO
                                              United States Attorney


                                              By:      */s/ Allison I. Brown*
                                                     ALLISON I. BROWN
                                                     Assistant United States Attorney
                                                     601 D Street, NW
                                                     Washington, DC 20530
                                                     202-252-7822
                                                     allison.brown2@usdoj.gov

                                              *Attorneys for the United States of America*

- 21 -